Arnold L. Fein, J.
This is an article 78 proceeding to review and vacate a determination of respondent ¡Superintendent of Insurance of the State of New York.
All parties concede that this proceeding for review must be transferred to the Appellate Division, First Department, in accordance with iCPLB 7803 (subd. 4) and CPLB 7804 (subd. [g]), and it is so ordered.
The remaining issue before Special Term is an application by petitioner to stay the enforcement of the determination and order of the Superintendent pending the hearing and determination of this proceeding by the Appellate Division. Petitioner is an unincorporated underwriting association of insurers duly organized and existing under and by virtue of article 17-B (§§ 651-658) of the Insurance Law.
Pursuant to section 652 of the Insurance Law, the membership of the association consists of all insurers who write, in New York State on a direct basis, fire and extended coverage insurance, with specified exceptions. Every such insurer must be a member thereof as a condition of transacting this kind of insurance in this State.
The statute (Insurance Law, § 653, subd. 1, par. [a]) provides : ‘ ‘ Any person having an insurable interest in insurable property, who has made a diligent effort in the normal insurance market to procure fire and extended coverage insurance from an authorized insurer, shall * * * be entitled to apply to the association for such coverage.”
Section 652 (subd. 3, par. [a]) of the Insurance Law requires the association to submit a “ plan of operation, consistent with the provisions of this article ’ ’ to the Superintendent for approval. The plan is required to provide, inter alia 1 ‘ reasonable and objective underwriting standards * * * and pro *592 cedures for determining amounts of insurance to be provided. ’ ’
Such a “ plan of operation ” for the association has been submitted to and approved by the Superintendent. This controversy involves the maximum amount of insurance to be written for respondent Buy-Bite Discount Centers Inc. Prior to January, 1970, insurance was issued by petitioner totaling $1,360,000 subject to varying limits at different parts of the premises. In January, 1970, Buy-Bite applied to the association for fire and extended coverage insurance on the contents of its premises operated as a single discount store at inter-connected buildings in Brooklyn, New York, in the amount of $1,410,000. The association approved the application only to the extent of $400,000 and caused an insurance policy for that amount to be issued to Buy-Bite.
Petitioner alleges that, as authorized by the approved ‘ ‘ plan of operation ”, because of the sole occupancy by Buy-Bite this amount was double the $200,000 contents, maximum limit fixed by the plan for this type of Wilding.
Buy-Bite then requested that coverage be increased to $800,000 blanket coverage, allegedly previously requested. Obtaining no response, Buy-Bite appealed to the appeals committee of the petitioner association demanding additional insurance of $400,000, for a total of $800,000. The appeals committee denied the appeal.
Buy-Bite then appealed to the Superintendent of Insurance. After hearing, the Superintendent made the determination now under review, overruling the association’s appeals committee and directing that an additional $400,000, amounting to a total $800,000 of insurance be granted.
Petitioner urges that it and its members will be irreparably harmed if a stay of the Superintendent’s order is not granted, pending review by the Appellate Division, because it will be compelled to write, against its considered judgment, on property it considers more than usually hazardous, contents insurance for $800,000, double the amount it desired to write after careful and thorough consideration.
Sections 34 and 655 of the Insurance Law provide for judicial review of such orders of the Superintendent. Section 34 authorizes a stay of such order, pending review, where the court determines that such a stay1 ‘ will not unduly injure the interests of the people of the state.”
Bespondent Buy-Bite has occupied the subject premises for 16 years without serious fire damage. It alleges that if it cannot obtain more than $400,000 fire insurance, it may be required *593 to curtail its inventory, which would result in a decrease of business and a reduced employment force.
As previously noted, Buy-Bite, prior to this application to the association, had over a million dollars of fire insurance, issued by petitioner.
Article 17-B of the Insurance Law was enacted in 1968, effective September 1, 1968, and expired December 31, 1971. The salutary purpose of the legislation is to “ promote orderly community development, especially in central city areas, by establishing a joint underwriting association to provide fire and extended coverage insurance for insurable properties * * * necessary to attract private capital to central city areas.” (Memorandum of Executive Department, Insurance-Joint Underwriting Association For Fire and Extended Coverage, 2 McKinney’s Sess. Laws, 1968, p. 2255; see the Governor’s Memorandum of Approval, 2 McKinney’s Sess. Laws, 1968, p. 2363.) The interest of the people of the State in such legislation is manifest. It should be unnecessary to belabor the point with respect to this or any other plan to correct social and economic conditions in distressed areas. An adequate market for fire and extended coverage insurance — the two lines essential to mortgage and mercantile financing — is necessary to attract private capital to central city areas, and also to keep businesses in such areas, as noted in the legislative and executive memoranda.
The effect of a stay herein would undoubtedly benefit all insurance company members of this association, permitting continued use of “ normal underwriting ” standards, which hitherto limited insurance available in the areas sought to be assisted by the legislation. It would not give adequate consideration to the commercial and social factors which necessitated enactment of article 17-B. It might very well deprive the people in distressed areas of employment and the opportunity to improve their own economic and social standing as well as their own neighborhoods. As the legislative history demonstrates, it is essential to make such areas more attractive and desirable for business investment.
Petitioner contends that the Superintendent erred in giving consideration to the “ depressed neighborhood ” and its minority population in arriving at his determination. It urges that this was contrary to the mandate of the statute ‘ ‘ that neighborhood or area location shall not he considered in determining insurable condition ’ ’ (Insurance Law, § 651, subd. 5; emphasis supplied). This argument stands the statute on its head. The *594 obvious purpose of this mandate is to prohibit the use of “neighborhood or area location” as a basis for limiting the amount of insurance available when the insurable condition of the property itself warrants a higher limit.
Petitioner contends that the action of the Superintendent violates the State and Federal Constitutions. It is well settled that on an application for a stay at Special Term, no such determination should be made unless the action or statute complained of is so patently unconstitutional as to admit of no argument. Moreover, the statute expires by its terms on December 31,1971, ‘ ‘ in order to enable the Legislature to reappraise the program in light of intervening events, including possible federal legislation.” (Memorandum of Executive Dept., supra.) Litigation concerning constitutionality might well continue beyond that date. No stay is warranted which would impede the implementation of this experimental legislation, particularly in the light of its purposes.
An increase in insurance limits would be appropriately compensated by premiums.
A stay would 1 ‘ unduly injure the interests of the people of the state.”
The motion for a stay is denied and petitioner is directed to comply with the order of the Superintendent.