RICHARD G. BRUECKNER, as President of the New York Property Insurance Underwriting Association, Respondent, v. SUPERINTENDENT OF INSURANCE OF THE STATE OF NEW YORK, Respondent, and A. J. LESTER, Appellant.

First Department, June 29, 1972.

*James B. Zane* of counsel (*Zane & Zane,* attorneys), for appellant.

*John P. Walsh* of counsel (*Warren A. Herland* with him on the brief; *Donovan, Donovan, Maloff & Walsh,* attorneys), for Richard Brueckner, respondent.

*Gilbert L. Offenhartz* of counsel (*Samuel A. Hirshowitz* with him on the brief; *Louis J. Lefkowitz, Attorney-General*), for Superintendent of Insurance, respondent.

EAGER, J.  This article 78 proceeding, transferred to this court, was brought to review and annul a determination of the Superintendent of Insurance overruling the denial by the New York Property Insurance Underwriting Association of an application of the respondent Lester for additional contents insurance covering his men's furnishings store in Harlem.

The petitioner (Underwriting Association) is a "joint underwriting association" organized and existing under and by virtue of article 17-B of the Insurance Law.  It was created by the Legislature to provide fire and extended coverage insurance to those persons having an insurable interest in insurable property and who were unable to obtain adequate fire and extended coverage insurance following diligent efforts in the normal insurance market.  The legislation was intended to promote orderly community development in central city areas to assist in attracting investment of private capital therein.  (See N. Y. Legis. Annual, 1968, pp. 313, 461; and see *Berry* v. *Stewart,* 64 Misc 2d 590, 593.)

The association is subject to the jurisdiction of the Superintendent of Insurance who was directed to approve and has approved its plan of operation, which the Legislature directed be: "consistent with the provisions of this article, which shall provide for economical, fair and nondiscriminatory administration and for the prompt and efficient provision of fire and extended coverage insurance to promote orderly community development, and which shall contain other matters including, but not limited to * * * reasonable and objective underwriting standards * * * and procedures for determining amounts of insurance to be provided by the association, which amounts shall in no event be in excess of one million five hundred thousand dollars for the insurable real property or the tangible personal property thereon."  (Insurance Law, § 652, subd. 3).

The jurisdiction of the Superintendent over the association is continuing and rulings, actions or decisions by or on behalf of the association are appealable to the Superintendent, as more fully specified in the plan of operation.  His orders are subject to judicial review.  (See Insurance Law, §§ 655 and 34.)

Defining "insurable property", subdivision 6 of section 651 includes real property situate in the State or tangible personal property located thereon "which property is determined by the

association, after inspection and pursuant to criteria specified in the plan of operation, to be in insurable condition; provided that neighborhood or area location shall not be considered in determining insurable condition ''.

Where an applicant for insurance, '' having an insurable interest in insurable property * * * has made a diligent effort in the normal insurance market to procure fire insurance, extended coverage and coverage for additional perils from an authorized insurer '' and the association, following a proper investigation, determines '' that (a) the property is insurable in accordance with the plan of operation and (b) there is no unpaid, uncontested premium due from the applicant for prior insurance on the property '', then, on payment of a proper premium amount and subject to the statutory limits as to amount of insurance, the association should issue an insurance policy covering the property for a term of one year. (See Insurance Law, § 653, subd. 1, pars. [a], [b].) Although the association is entitled to consider all relevant criteria in determining whether the property is insurable in accordance with its plan of operation, its determination must be grounded on a rational basis. Particularly, in deciding whether the property is insurable as meeting ''reasonable and objective underwriting standards '', no consideration may be given to '' area or neighborhood location ''. Where the determination of the association is arbitrary or capricious, the Superintendent is empowered to and, on proper appeal should, set it aside.

Here, the respondent Lester, having coverage of $250,000 through the Underwriting Association, applied for additional insurance in the amount of $150,000 to cover the contents of his men's furnishings store. It is not disputed that Lester required the additional insurance to adequately cover his inventory and that the additional insurance was within permissible statutory limits. The value of the inventory of his store approximated $400,000 and, apart from the location, the risk was not unusual or unduly hazardous. Lester had carried on business at the particular location for about 40 years without sustaining a serious insurable loss. It further appeared that the normal channels of insurance were not open to assure the adequate coverage needed; the additional insurance was not otherwise obtainable except in the high rate excess market. If the additional insurance is not issued, Lester will be required to curtail his inventory and business, and lay off certain of his employees now obtaining work in this depressed area. Actually, under the circumstances, Lester is exactly the type of person the statute

was designed to protect — so that he and others like him can continue their investment in depressed communities.

On the basis of the foregoing established facts, there is a rational basis for the Superintendent's determination directing that the Underwriting Association grant Lester's application for additional insurance. Inasmuch as the Underwriting Association was bound to determine Lester's application for additional insurance, including the insurable condition of his property, on the basis of "reasonable and objective underwriting standards" without regard to the hazards arising solely because of the neighborhood, we may assume that the "neighborhood or area location" was not considered as a factor influencing the denial of Lester's application. Under the circumstances, the reference by the Superintendent in his decision to the "depressed area location" and the "sociological factors" involved is accepted as merely incidental to his discussion of the case and of his intent to give due effectuation to the purpose of the statute.

The determination of the Superintendent being grounded on a rational basis and supported by substantial evidence, should be confirmed and the petition dismissed with costs. The appeal by respondent Lester from order insofar as it denied his cross motion to dismiss the article 78 petition by the Underwriting Association, dismissed without costs and disbursements, on the ground that the order is nonappealable as of right (see CPLR 5701, subd. [b]) and upon the further ground that the questions raised on such appeal are academic in view of the order now rendered by this court.

STEUER, J. (dissenting). The petitioner is an association of insurance underwriters created by statute (Insurance Law, art. 17-B) which defines its duties and obligations. Membership in the association is mandatory for all companies writing fire and extended coverage insurance in the State. The purpose of the association is to provide fire insurance for persons unable to obtain it in the open market. Risks, expenses and profits are apportioned among the member companies in a manner not involved in this application. The statute requires the association to submit a plan of operation to respondent Superintendent of Insurance. Such a plan was submitted and approved by him. The plan specifies the extent of the risk that must be assumed for any one location.

One Lester applied for insurance on the contents of a store located in a building at 281 West 125th Street. Lester was but one of several commercial tenants in the building. The maxi-

mum limit provided in the plan for contents of a store in a building of this character is $250,000. Lester applied for insurance in this amount and it was written. Thereafter he applied for $150,000 additional insurance. This request was refused. Lester appealed this decision to respondent as permitted by the statute (§ 655, subd. 1). Respondent directed that the additional insurance be written. The basis for respondent's decision was that the store was located in a depressed neighborhood, employed 12 persons, mostly black, and that lacking the insurance this staff would have to be reduced. This proceeding followed.

An examination of the statute and the approved plan submitted pursuant to it can leave little doubt that respondent's decision and consequent direction were arbitrary. The plan provides that where insurance in excess of the amount provided for in the plan is sought, petitioner's underwriting committee "may approve such additional amount of insurance as it may deem proper." In making such a determination, as in all other determinations as to the amount of coverage to be supplied, the committee must use "reasonable and objective underwriting standards" (Insurance Law, § 652, subd. 3, par. [a]).

It thus appears in the first instance that the writing of insurance beyond the amounts provided for in the plan is discretionary with the petitioner's underwriting committee, provided, of course that that discretion is exercised in accord with reasonable and objective underwriting practices. Secondly, the Superintendent in reviewing the committee's action is bound to the same standard. Here the committee's report on Lester's application gives what appears to be sound objective reasons from an underwriting standpoint for not increasing the risk. The Commissioner does not appear to quarrel with these reasons or fault them in any way. He overrules the determination on purely sociological grounds having nothing to do with a consideration of what was a reasonable risk to assume on this property and gives no consideration at all to the factors which should properly induce a finding of this nature.

MARKEWICH, J. P., and KUPFERMAN, J., concur with EAGER, J.; STEUER, J., dissents in an opinion.

Determination of respondent Superintendent of Insurance, dated October 15, 1970, confirmed, and the petition dismissed. Respondent Superintendent of Insurance shall recover of petitioner $50 costs and disbursements of the proceeding; and the appeal by respondent-appellant from the order of the Supreme Court, New York County, so far as appealed from, dismissed,

without costs and without disbursements, on the ground that the order is nonappealable as of right (CPLR 5701, subd. [b]) and upon the further ground that the questions raised on such appeal are academic in view of the court's aforesaid determination of the proceeding.